IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No. 5:20-cv-411

| | | |
|---|---|---|
| HELEN JO TALIAFERRO, KENNETH DURDEN, KENDALL GIBBS, RICKY SCOTT, NORTH CAROLINA COUNCIL OF THE BLIND, INC., GOVERNOR MOREHEAD SCHOOL ALUMNI ASSOCIATION, INC., and DISABILITY RIGHTS NORTH CAROLINA, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| v. | ) ) | **(Jury Trial Demanded)** |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, in her official capacity as Executive Director of the NCSBOE, DAMON CIRCOSTA, in his official capacity as Chair of the NCSBOE, STELLA ANDERSON, in her official capacity as Secretary of the NCSBOE, KEN RAYMOND, in his official capacity as Member of the NCSBOE, JEFF CARMON III, in his official capacity as Member of the NCSBOE, and DAVID C. BLACK, in his official capacity as Member of the NCSBOE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PRELIMINARY STATEMENT

1.      Plaintiffs challenge the North Carolina State Board of Elections ("NCSBOE")

and, in their official capacities, its Executive Director, Karen Brinson Bell, its Chair, Damon

Circosta, its Secretary, Stella Anderson, and its Members, Ken Raymond, Jeff Carmon III, and

David C. Black, for operating an Absentee Voting program that is inaccessible to North

Carolinians with disabilities. North Carolina's Absentee Voting program requires voters to fill

out a paper ballot using a pen or marker and to physically return the ballot to the County Board

of Elections. The Absentee Voting Program provides no alternatives to accommodate individuals with vision disabilities who vote from home.

2.    Blind[1] voters who rely on alternative formats—including Braille, large print, electronic, and/or audio formats—cannot use Defendants' print absentee ballots on an equal basis with other voters. Blind voters must secure the assistance of a third party to vote absentee, burdens that Defendants do not place on non-disabled voters who can access this information in standard-size print format. As a result, blind voters must give up the independence and confidentiality enjoyed by others who use Defendants' Absentee Voting Program.

3.    Voting privately and independently is one of the most fundamental and cherished American rights.  Non-disabled citizens expect and are afforded this right.  For too long, however, blind voters seeking to vote absentee have been regularly denied this right due to the absence of accessible absentee ballots.  Yet this inequality is no longer necessary, since accessible alternative means of requesting, receiving, marking, and returning absentee ballots are readily available.  Such alternatives enable blind voters to privately review ballots and independently cast their votes without having to disclose their voting choices to another person or needing to rely upon a non-disabled person to fill out their ballot choices for them.

4.    Furthermore, under the current COVID-19 pandemic, individuals with vision disabilities must choose between their health and their right to cast a private, independent vote because the only accessible option to privately and independently mark their ballot are accessible voting machines located at in-person polling locations.

---

[1] Plaintiffs use the word "blind" to describe individuals who, as a result of a vision impairment, use alternative techniques or assistive technology for tasks done visually by persons without a visual impairment, including people who identify as "totally" blind and people with low vision.

5.      Federal law guarantees that access to a private and independent ballot for voters with disabilities must be equal to that afforded voters without disabilities. *See* Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.* and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* (requiring that covered entities provide meaningful access to private and independent voting for voters with disabilities). *See also* Help America Vote Act of 2002, Pub. L. 107–252 § 301, 116 Stat. 1666, 1704 (*codified as amended at* 52 U.S.C. § 21081) (enshrining the right to review and change one's ballot privately and independently in federal elections).

6.      North Carolina can make its Absentee Voting Program accessible to voters with vision disabilities to vote from home, as other states have done.

7.      Defendants are aware of the need to make the Absentee Voting Program accessible and have not done so. On June 29, 2020 Disability Rights North Carolina and Disability Rights Advocates submitted a letter to the NCSBOE outlining the barriers to absentee voting for voters who are blind, along with requested remedies. To date, the NCSBOE has not committed to addressing the barriers raised in the letter.

## JURISDICTION AND VENUE

8.      Plaintiffs' federal claims are made pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

10.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

11.     Venue is appropriate in the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions that gave rise to Plaintiffs' claims occurred within this District and Defendants' principal office and place of business is in this District.

## PARTIES

12.     PLAINTIFF HELEN JO TALIAFERRO is registered to vote in North Carolina. Ms. Taliaferro resides in Chatham County, North Carolina. Ms. Taliaferro is blind and 68 years old. She is Treasurer of the North Carolina Council of the Blind. Ms. Taliaferro previously worked as a Presbyterian minister and is now retired. She is a member of the board of the Fearrington Village Singers, a community chorus that performs in a retirement community, and she also volunteers for the Chatham County Council on Aging. Ms. Taliaferro has voted in past elections and plans to vote in the November 3, 2020 General Election and in subsequent federal, state, and local elections.

13.     PLAINTIFF KENNETH DURDEN is registered to vote in North Carolina. Mr. Durden resides in Mecklenburg County, North Carolina.  Mr. Durden is blind and has been diagnosed with Type II diabetes and hypertension. Mr. Durden is a member of the North Carolina Council of the Blind, and President of its Charlotte Chapter. He works full-time at Lion Services, a manufacturing company, and likes to read books, go bowling, and do other activities in the community in his free time. Mr. Durden has voted in past elections and plans to vote in the November 3, 2020 General Election and in subsequent federal, state, and local elections.

14.     PLAINTIFF KENDALL GIBBS is registered to vote in North Carolina. Ms. Gibbs resides in Wake County, NC. Ms. Gibbs is a graduate student at NC State University, seeking her master's degree in social work. She also works as Community Inclusion Specialist

for the Alliance of Disability Advocates, a Center for Independent Living. She is also a board

member of the North Carolina Council of the Blind. Ms. Gibbs has low vision and does not have

enough vision to read, mark, and sign a standard print ballot without assistance. Ms. Gibbs has

voted in past elections and plans to vote in the November 3, 2020 General Election and in

subsequent federal, state, and local elections.

15.     PLAINTIFF RICKY SCOTT is registered to vote in North Carolina. Dr. Scott

resides in Wake County, NC. Dr. Scott holds a doctorate from NC State University and works as

a consultant on higher education. Dr. Scott is blind and a member of both the North Carolina

Council of the Blind and the Governor Morehead School Alumni Association, Inc.  He also

serves on the Raleigh Mayor's Committee for Persons with Disabilities and the NC Statewide

Independent Living Council and is an avid reader and beep baseball player. Dr. Scott has voted

in past elections and plans to vote in the November 3, 2020 General Election and in subsequent

federal, state, and local elections.

16.     PLAINTIFF DISABILITY RIGHTS NORTH CAROLINA ("DRNC") is an

independent non-profit corporation organized under the laws of the State of North Carolina.

DRNC is a Protection and Advocacy system ("P&A"), as that term is defined under the

Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 15041 *et

seq.*, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI

Act"), 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of Individual Rights Act

("PAIR Act"), 29 U.S.C. § 794e *et seq.*, with offices in the State of North Carolina located at:

3724 National Drive, Suite 100, Raleigh, N.C. 27612.

17.     As North Carolina's Protection & Advocacy system, DRNC is specifically

authorized to pursue legal, administrative, and other appropriate remedies or approaches to

ensure the protection of, and advocacy for, the rights of individuals with disabilities. *See* 42

U.S.C. § 15043(a)(2)(A)(i). DRNC represents the interests of North Carolinians with disabilities,

and the voting rights of people with disabilities are germane to the organization's purpose.

Pursuant to the authority vested in it by Congress to file claims of rights violations on behalf of

individuals with disabilities, DRNC brings claims on behalf of individuals with disabilities,

including the individuals named herein, who are seeking or may seek the right to vote using an

accessible absentee ballot in the November 3, 2020 General Election, and for all future elections

involving the use of the Absentee Voting Program.

18.     PLAINTIFF NORTH CAROLINA COUNCIL OF THE BLIND, INC. ("NCCB")

is the North Carolina State affiliate of the American Council of the Blind.  Its purpose is to

support and promote the educational, vocational, and social advancement of blind persons.  Its

members are blind and deaf-blind and are qualified individuals with disabilities within the

meaning of all applicable statutes.  NCCB has many blind members who are registered to vote in

North Carolina and wish to vote absentee privately and independently, on the same terms as all

other voters.

19.     PLAINTIFF GOVERNOR MOREHEAD SCHOOL ALUMNI ASSOCIATION,

INC. ("GMSAAI") is an independent non-profit corporation organized under the laws of the

State of North Carolina, located in Raleigh, N.C. Its purpose is to support a productive quality of

life for blind and deaf attendees, graduates, and current students of the Governor Morehead

School. The GMSAAI supports organizational initiatives that empower self-advocacy,

independence, pre-employment skills and employment opportunities for blind and deaf

individuals, including by providing merit, academic, and vocational monetary awards to blind

and deaf students who pursue post-secondary education as well as vocational training. GMSAAI

has many blind members who are registered to vote in North Carolina and wish to vote absentee privately and independently, on the same terms as all other voters.

20.     DEFENDANT NORTH CAROLINA STATE BOARD OF ELECTIONS ("NCSBOE") is the State agency responsible for managing and supervising elections in North Carolina. NCSBOE is responsible for ensuring that North Carolina operates elections in conformity with state and federal law, including Title II of the ADA and Section 504. NCSBOE is a public entity under Title II of the ADA. NCSBOE receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance to develop, certify and maintain voting.

21.     DEFENDANT KAREN BRINSON BELL is sued in her official capacity as the Executive Director of the NCSBOE.

22.     DEFENDANT DAMON CIRCOSTA is sued in his official capacity as the Chair of the NCSBOE.

23.     DEFENDANT STELLA ANDERSON is sued in her official capacity as the Secretary of the NCSBOE.

24.     DEDENDANTS KEN RAYMOND, JEFF CARMON, III, and DAVID C. BLACK are sued in their official capacity as members of the NCSBOE.

## STATEMENT OF FACTS

### Voting Procedures in North Carolina

25.     Absentee voting in North Carolina is excuse-free and available to any voter who requests an absentee ballot.

26.     The Absentee Voting Program relies exclusively on hard-copy, print communications. North Carolina voters request absentee ballots through a form that must be

filled out and signed in hard copy (the "wet signature" requirement). The request form must then be mailed, emailed, faxed or hand-delivered to the voter's county board of elections. The General Assembly recently approved legislation allowing for an online absentee ballot request form, however that program will not be implemented until September 1, 2020, and Defendants have not indicated whether it will be accessible using assistive technology.

27.     Once a voter's absentee ballot request is processed, North Carolina mails a paper absentee ballot to the requesting voter. The only option for North Carolina voters, including Plaintiffs, is a paper absentee ballot.

28.     Paper absentee ballots are not accessible to Plaintiffs or to other individuals who are blind. Blind individuals cannot read the standard-size printed text that appears on the absentee ballot. Thus, to vote absentee, Plaintiffs and other blind North Carolina voters must rely on the assistance of another person to read and mark their paper absentee ballots for them. Such assistance strips Plaintiffs of the independence and secrecy of their ballots, as well as the assurance that the ballot is marked with their choices.

29.     Defendants provide no accessible means for voters with vision disabilities to receive, mark, or submit an absentee ballot privately and independently.

**The Need for Accessible Absentee Ballots**

30.     Ensuring that absentee voting is made accessible for blind voters is particularly important because citizens with disabilities already face many barriers to full and equal participation in the voting process, in contrast with sighted voters. Currently, the only accessible option for blind voters in North Carolina who wish to vote independently is to go to in-person polling locations and use an accessible voting machine. Even if those machines function properly, there are still many barriers to accessible voting for blind voters. For example, many

blind voters rely on public transportation to access in-person polling locations and not all polling locations are accessible by public transportation.

31. Regardless of the accessibility of in-person voting, Title II of the ADA and Section 504 of the Rehabilitation Act require that each voting program operated by the NCSCBOE be accessible to voters with disabilities, so the accessibility of the In-Person Voting Program does not eliminate the requirement that the Absentee Voting Program be accessible.

32. NCSBOE's Absentee Voting Program requires blind voters to choose between casting a private independent ballot at their polling place or giving up their independent and secret ballot by relying on sighted assistants to help them complete absentee ballots. In contrast, sighted voters have the freedom and flexibility to vote independently either in person or absentee.

33. As a result of these and other barriers, citizens with disabilities as a whole have lower turnout levels for voting than those without disabilities.[2]  The denial of one's right to vote with full privacy and independence is particularly disenfranchising, as these are the hallmarks of free voting in a democracy.  Requiring voters with vision disabilities to dictate their votes to

---

[2] *See* Lisa Schur and Douglas Kruse, *Fact sheet: Disability and Voter Turnout in the 2018 Elections*, Rutgers School of Management & Labor Relations (2019), https://smlr.rutgers.edu/ sites/default/files/2018disabilityturnout.pdf (showing 44.9% turnout of North Carolina voters with disabilities as compared to 53.5% turnout amongst voters without disabilities in the 2018 midterm elections). *See also* Lisa Schur and Douglas Kruse*, Fact sheet: Disability and Voter Turnout in the 2016 Elections*, Rutgers School of Management & Labor Relations (2017), https://smlr.rutgers.edu/sites/default/files/documents/PressReleases/kruse_and_ schur_- _2016_disability_turnout.pdf (reporting 53.7% national turnout rate for voters with vision disabilities as compared to 62.2% turnout for voters without disabilities in the 2016 general elections); Matt Vasilogambros, *How Voters With Disabilities Are Blocked From the Ballot Box*, The Pew Charitable Trusts (2018), https://www.pewtrusts.org/en/ research-and-analysis/blogs/stateline/2018/02/01/how-voters-with-disabilities-are-blocked-from-the-ballot-box.

third parties in order to vote absentee will inevitably deter some voters and further decrease turnout rates among citizens with disabilities

34.     Furthermore, in light of COVID-19, the need for implementation of an accessible Absentee Voting Program is more pressing than ever. In response to the pandemic, it is reasonably expected many voters will exercise the option to vote by absentee ballot and the number of in-person poll sites will be reduced, leaving blind voters with the impossible choice between relying on—and being exposed to—sighted assistants to complete their ballots absentee, or needing to make travel arrangements and to wait in long lines at limited in-person polling locations, subjecting themselves to the unnecessary risks of exposure and infection by COVID-19.

35.     Public health and government officials consider social distancing critical to prevent the spread of COVID-19. The North Carolina General Assembly has already recognized the risks posed by the pandemic to voters in the upcoming election, and acknowledged the value of social distancing in the Voting Program by temporarily reducing the witness requirements for absentee ballots so as to limit voters' exposure to infection by those outside of their household.

36.     As daily COVID-19 case counts and hospitalizations increase across the state, the Governor has issued several executive orders recognizing the value of social distancing to reduce spread of the virus and the risks inherent in large groups of people gathering in a single location for more than a few minutes.[3]  Further, the Governor has recognized that people over

---

[3] Exec. Order No. 117 (Mar. 14, 2020) (prohibiting mass gatherings, closing schools, and urging all people to maintain six feet of social distance from others); Exec. Order No. 120 (Mar. 23, 2020) (placing additional limitations on group gatherings); Exec. Order 121 (Mar. 27, 2020) (ordering all North Carolinians to stay in their homes); Exec Order 131 (Apr. 9, 2020) (establishing Emergency Maximum Occupancy rates at stores and retail locations); Exec. Order No. 147 (June 24, 2020) (requiring face coverings in certain settings to address troubling trends in COVID-19 metrics); Exec. Order 151 (July 16, 2020) (recognizing higher risk of contracting

the age of 65 and those with serious underlying medical conditions are at heightened risk of severe illness from COVID-19, and has recommended that people in this high risk group to stay home unless travel is "absolutely essential." [4]

37.     However, North Carolina has yet to recognize the specific risks the pandemic poses for blind voters, much less modify the Absentee Voting Program to accommodate their needs.

38.     Requiring people with vision disabilities to travel to limited in-person polling locations to use an accessible voting machine or to seek in-person assistance from others to complete their absentee ballots puts them at risk of COVID-19 infection.[5]

39.     Certain people are at high risk of serious complications or death from COVID-19, including older adults (like Plaintiff Taliaferro), those with immune disorders, heart, lung, kidney, or liver disease, diabetes (like Plaintiff Durden), chronic lung disease (including chronic obstructive pulmonary disease ("COPD"), asthma, or obesity.[6]

40.     While blindness on its own is not a risk factor for COVID-19, people with vision disabilities have increased risk of exposure due to their disabilities.[7] People with vision

---

COVID-19 in settings where people "are in close physical proximity" for more than 15 minutes, recognizing the value of social distancing to reduce spread, recognizing continuing increases in COVID-19 cases and hospitalizations in North Carolina). Executive Orders are available online at https://governor.nc.gov/news/executive-orders.

[4] Exec. Order No. 141 (May 20, 2020), available at https://governor.nc.gov/news/executive-orders.

[5] *See Coronavirus Disease 2019 (COVID-19): People with Disabilities*, Centers for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html (last visited July 21, 2020).

[6] *See Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 21, 2020)

[7] *See COVID-19 and Blindness: Staying Safe and How to Help*, World Services for the Blind, https://www.wsblind. org/blog/2020/3/26/covid-19-and-blindness-staying-safe-and-how-to-help (last visited July 23, 2020).

disabilities often rely on touch more than sighted people and therefore are at heightened risk of touching surfaces with the virus. Further, blind people may have difficulty social-distancing because they may not be able to tell if others around them are adequately distanced, nor can they as readily confirm whether others around them are wearing masks.

41.     Individuals, such as Plaintiffs, who require assistance to fill out and sign paper forms cannot both socially distance themselves from others and vote absentee in North Carolina. By requiring Plaintiffs to come into close contact with others to assist them in reading, completing, and signing the absentee ballot, Defendants put individuals with vision disabilities at unnecessary risk of contracting COVID-19.

42.     People who need but cannot access assistance because of COVID-19 cannot safely vote from home; they must either give up their right to vote or unnecessarily risk contracting COVID-19 by requesting assistance to vote absentee or by traveling to their polling places to vote in person.

**Mechanisms Available to Provide Accessible Absentee Ballots**

43.     Implementing accessible alternatives to standard-print paper absentee ballots, such as Braille or large print versions of paper ballots, would afford Plaintiff Durden an equal opportunity to vote privately and independently via absentee ballot.

44.     Accessible electronic alternatives to standard-size print paper absentee ballots exist and are used by other states, and would afford Plaintiffs Taliaferro, Gibbs, and Scott an equal opportunity to vote privately and independently via absentee ballot.

45.     The State of Maryland developed an online ballot marking tool that allows voters to access and mark their absentee ballots on their computers. Maryland created the tool to work with screen access software used by many blind people to access written material and has

extensively tested the tool's usability for individuals with a variety of disabilities. In the November 2014 election, more than 1,700 Maryland voters with disabilities used the tool to mark their voting selections on their computers, review a summary screen showing their selections, and print out their ballots with their selections marked. Although the absentee ballot must still be printed, signed, and returned to the voter's local board of election, voters need not sacrifice the secrecy of their ballots to receive assistance with signing because the signature page prints separately from the ballot. On information and belief, Maryland shares its online ballot marking tool technology with other states at no charge.

46.     Similarly, Oregon, Wisconsin, and New Hampshire have employed an accessible electronic voting system that can be used for both in-person and absentee voting. Using the platform, voters can access their absentee ballots through their web browser and mark their ballots on their computers. Voters then print their ballots and mail them back to their local boards of election where their votes are counted. On information and belief, the platform used by these states has been released as open source technology, meaning that it can be used by the NCSBOE, or by any other entity, free of charge.

47.     The State of West Virginia has similarly provided an electronic absentee ballot delivery and marking tool to voters with disabilities. Voters access the electronic absentee ballot tool via a web portal, where they are guided with on-screen instructions on how to open and complete the electronic ballot. After completing the ballot, West Virginia law provides that qualifying voters may either (1) print and mail their absentee ballot to their county clerk, or (2) submit their absentee ballot electronically to their county clerk directly through the web portal. The web portal is accessible for voters with vision disabilities using on their computers.

48. Other states, including Alaska, have provided accessible remote voting options for some elections. Alaska provides an electronic absentee ballot that can be completed and transmitted using the voter's computer. Such electronic absentee voting systems can be made accessible for blind voters who use screen access software.

49. As all states must do, North Carolina participates in a special absentee voting program for certain voters under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 *et seq*. Absentee ballots are available by mail, fax, or email 30 days prior to municipal elections, 50 days prior to statewide primaries, and 60 days prior to general elections. Such military and overseas voters may return their completed ballots by mail, fax, or email by the close of polls on Election Day (7:30 p.m. EST). The fax and email options are only permitted to voters who are out of the county. Voters cannot gain access to this program through their disability status. (North Carolina State Board of Elections, Military and Overseas Voting, available at https://www.ncsbe.gov/Voting-Options/Military-Overseas-Voting.)

50. Faced with a similar inaccessible absentee ballot problem, Michigan agreed to modify its UOCAVA voting system to make it available to individuals with vision disabilities. As an interim fix, Michigan made its UOCAVA PDF ballots accessible and available to blind voters in Michigan—in addition to military and overseas voters. After Michigan agreed to make its absentee ballots accessible, it was able to offer accessible absentee ballots electronically to voters with disabilities within days—and in time for a May 5, 2020 election in that state. Stipulated and Consent Order Resolving Plaintiffs' Motion for Temporary Restraining Order (ECF No. 24), *Powell et al. v. Benson et al.,* Case No. 2:20-Cv-11023-GAD-MJH (E.D. Mich. May 1, 2020). Implementing this interim solution imposed minimal financial costs on

Michigan, and would impose similarly minimal costs on Defendants, because it can be implemented quickly and using widely available commercial software.

51.     Similarly, the New York State Board of Elections agreed to email accessible absentee ballots to qualified voters with disabilities for the recent June 23, 2020 Primary Election in that state. Stipulation of Settlement and Order for the Withdrawal of the Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 38), *Hernandez et al. v. New York State Board of Elections et al.*, Case No. 1:20-cv-4003 (LJL) (S.D. New York June 2, 2020).

52.     Making UOCAVA absentee ballots available to all individuals with vision disabilities (and other disabilities that affect the voter's ability to read a paper ballot, or to hold a pen or marker and mark a paper ballot) could be implemented in time to provide improved access for voters with vision disabilities in North Carolina for the November 3, 2020 general election.

53.     Any North Carolina registered voter may request an absentee ballot for the November 2020 general election. Because of the COVID-19 pandemic, in order to avoid going to polling places and possibly compromising their health or even their lives, many voters will do so. Voters with disabilities should have the same opportunity to vote absentee privately, independently, and safely as voters without disabilities.

54.     Numerous other states provide accessible electronic absentee ballot marking tools using commercially available systems that allow voters to receive ballots online or by email, mark ballots on their computers using assistive technology, and return ballots via online submission, email, or mail.

**Communications with Defendants**

55.     Plaintiffs have requested that the State Board of Elections make their Absentee Voting Program accessible.

56.     On June 29, 2020, DRNC and Disability Rights Advocates submitted a letter to Defendants reminding them that the ADA and Section 504 require implementation of an accessible absentee ballot system to ensure that voters with disabilities have an equal opportunity to cast their ballots privately and independently, and provided recommended steps to improve the accessibility of the Absentee Voting program.

57.     Defendants have failed to change the Absentee Voting Program despite Plaintiffs' efforts to resolve the inaccessible Absentee Voting Program without litigation.

**Individual Plaintiffs' Need for Accessible Absentee Voting**

58.     PLAINTIFF TALIAFERRO is blind. Because of her vision disability, Ms. Taliaferro is unable to read or fill out a paper absentee ballot. Ms. Taliaferro uses a tablet and smartphone with screen reader assistive technology to read, fill out, and sign accessible electronic documents. Ms. Taliaferro regularly votes in person using an accessible voting machine. However, she would like to vote absentee privately and independently, using the assistive technology that she already uses regularly, as other North Carolinians are entitled to do, especially given the COVID-19 pandemic and her high-risk status as an older person.

59.     PLAINTIFF DURDEN is blind. Because of his vision disability, Mr. Durden is unable to read or fill out a paper absentee ballot. Mr. Durden's preferred format is Braille, and he sometimes uses a computer and smartphone with assistive technology to read, fill out, and sign accessible electronic documents. Mr. Durden would like to vote absentee privately and independently, as other North Carolinians are entitled to do. Mr. Durden regularly votes in

person using an accessible voting machine. However, he now plans to vote by absentee ballot due to the COVID-19 pandemic: he was hospitalized for nearly three weeks in April 2020 after contracting the virus, including nearly two weeks in the Intensive Care Unit, and he fears being exposed a second time if he votes in person, especially given his risk factors of Type II diabetes and hypertension. As a consequence, Mr. Durden is not able to go to his physical polling location in the upcoming election because of the health risks of COVID-19.

60.     PLAINTIFF GIBBS is a person with low vision. Because of her vision disability, Ms. Gibbs is unable to read standard print or to identify the proper location for a signature on standard print documents. Ms. Gibbs uses a computer with screen reader assistive technology to read, fill out, and sign accessible electronic documents. Ms. Gibbs would like to vote absentee privately and independently from her home, as other North Carolinians are entitled to do, in the upcoming elections. Ms. Gibbs regularly votes in person using an accessible voting machine. However, she would like to vote absentee privately and independently, using the assistive technology that she already uses regularly, especially given the COVID-19 pandemic and the risks posed by voting in person.

61.     PLAINTIFF SCOTT is blind. Because of his vision disability, Dr. Scott is unable to read or fill out a paper absentee ballot. Dr. Scott regularly uses a computer with screen reader assistive technology to read, fill out, and sign accessible electronic documents. Dr. Scott last voted by absentee ballot approximately twenty-five years ago. However, he required the help of a sighted assistant to complete the inaccessible print ballot, so he had to forfeit the privacy and independence of his vote. In order to vote privately and independently, he has since voted in person using an accessible voting machine. He would now like to vote absentee privately and independently, using the assistive technology that he already uses regularly, as other North

Carolinians are entitled to do, especially given the COVID-19 pandemic and the risks posed by voting in person.

62. Defendants' failure to meet their obligations to provide Plaintiffs with an equal opportunity to vote absentee constitutes discrimination against them and is an ongoing and continuous violation of the ADA and its implementing regulations and Section 504.

**FIRST CLAIM FOR RELIEF**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12131, *et seq.***

63. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

64. Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, guarantees individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

65. Title II mandates, inter alia, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

66. In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

67. Furthermore, such public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with

disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160.

68.　　The ADA regulations provide that "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities."  28 C.F.R. § 35.160(b)(2). To be effective, the "auxiliary aids and services must be provided in […] such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2). Auxiliary aids and services specifically include "screen reader software; magnification software; optical readers; … [and] accessible electronic and information technology." 28 C.F.R. § 35.104.

69.　　Title II of the ADA requires Defendants to make reasonable modifications in the Absentee Voting Program to avoid discrimination against Plaintiffs on the basis of disability. *See* 28 C.F.R. § 35.130(b)(7).

70.　　Lastly, the ADA also prohibits Defendants from using criteria or methods of administration that discriminate on the basis of disability. *See* 28 C.F.R. § 35.130(b).

71.　　Defendant NCSBOE is an agency of the State of North Carolina, which is a public entity subject to the nondiscrimination provisions of Title II of the ADA. Individual Defendants are sued in their official capacities and are responsible for carrying out the operations of Defendant NCSBOE.

72.　　Absentee voting is a service, program, or activity provided by Defendants.

73.　　Individual Plaintiffs are individuals with disabilities under the ADA.

74.     Associational Plaintiffs NCCB and GMSAAI have members who are qualified individuals with disabilities under the ADA who seek equal access to the Absentee Voting Program.

75.     Associational Plaintiff DRNC is statutorily authorized to represent individuals with disabilities under the ADA. Plaintiff DRNC represents the interests of North Carolinians with disabilities and the protection of the voting rights of individuals with disabilities is germane to its purpose. Plaintiff DRNC seeks equal access to the Absentee Voting Program on behalf of its constituents with disabilities.

76.     Defendants have failed to meet their obligations to provide voters with disabilities with an opportunity to vote absentee that is equal to the opportunity provided to other voters.

77.     By failing to implement an accessible Absentee Voting Program, Defendants have refused to provide an auxiliary aid or service necessary to allow Plaintiffs to vote absentee as effectively as voters without disabilities.

78.     Defendants' failure to make reasonable modifications in their operation of the Absentee Voting Program discriminates against Plaintiffs on the basis of disability by making it impossible or more difficult for them to vote absentee and burdens their right to a private and independent ballot.

79.     Defendants' design and administration of their Absentee Voting Program, and in particular their use of inaccessible standard-print absentee ballots, excludes individuals with disabilities from the Absentee Voting Program in violation of 28 C.F.R. § 35.130(b)(3).

80.     By failing to ensure that absentee ballots are accessible to voters with disabilities, Defendants use criteria or methods of administration that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the Voting Program in North

Carolina with respect to persons with disabilities, and discriminating against such persons in violation of Title II of the ADA.

81.    Accordingly, Defendants have discriminated against Plaintiffs because their service, program, or activity of absentee voting is inaccessible.

82.    As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' Absentee Voting Program, they will be unable to vote privately and independently by absentee ballot in the November 3, 2020 General Election and in all future elections, and in order to vote they will be forced to risk their health and safety due to the threat of COVID-19.

83.    In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote by absentee ballot privately and independently in upcoming elections.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973,
## 29 U.S.C. § 794, *et seq.*

84.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

85.    Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

86.    Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such

assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" 29 U.S.C. § 794(b)(1).

87.     Individual Plaintiffs are otherwise qualified individuals with disabilities under the Rehabilitation Act.

88.     Defendant NCSBOE, an agency or instrumentality of the State of North Carolina, receives federal financial assistance, thereby subjecting it to the requirements of Section 504. Individual Defendants are sued in their official capacities as those responsible for carrying out the operations of Defendant NCSBOE.

89.     Absentee voting is a service, program, or activity provided by the NCSBOE.

90.     By failing to offer accessible absentee ballots and requiring Plaintiffs to depend on sighted assistants to participate in the Absentee Voting Program, Defendants discriminate against Plaintiffs based on disability.

91.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' Absentee Voting Program, they will be unable to vote privately and independently by absentee ballot in the November 3, 2020 General Election and in all future elections, and in order to vote they will be forced to risk their health and safety.

92.     In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote by absentee ballot privately and independently in upcoming elections.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the Court to provide relief as set forth below:

1.     A declaration that Defendants have violated and continue to violate the ADA and

Section 504 by failing to provide individuals with vision disabilities an accessible means of receiving, marking, and submitting absentee ballots with privacy and independence;

2.　　　　A preliminary and permanent injunction prohibiting Defendants from violating the ADA and Section 504 and requiring them to offer alternative format absentee ballots allowing private and independent method of absentee voting that is accessible for Plaintiffs and others with vision disabilities in time for use by voters in the November 3, 2020 elections and in all future elections;

3.　　　　An award of Plaintiffs' reasonable attorney's fees and costs; and

4.　　　　Such other and further relief as the Court may deem just and proper.

This 27th day of July, 2020.　　　　　　　Respectfully submitted,

/s/ Holly Stiles
Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930
Lisa Grafstein
lisa.grafstein@disabilityrightsnc.org
N.C. State Bar No. 22076
Luke Woollard
luke.woollard@disabilityrightsnc.org
N.C. State Bar No. 48179
DISABILITY RIGHTS NC
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: (919) 856-2195
Fax:　　(919) 856-2244

Stuart Seaborn*
sseaborn@dralegal.org
C.A. State Bar No. 198590
Rosa Lee Bichell*
rbichell@dralegal.org
C.A. State Bar No. 331530
DISABILITY RIGHTS ADVOCATES
2001 Center St #4

Berkeley, CA 94704
Phone: (510) 665-8644
Fax:     (510) 665-8511
*Notice of Special Appearance forthcoming

Christina Brandt-Young*
cbrandt-young@dralegal.org
N.Y. State Bar No. 4165189
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel:  (212) 644-8644
Fax:  (212) 644-8636
*Notice of Special Appearance forthcoming

ATTORNEYS FOR PLAINTIFFS