IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-411-BO

HELEN JO TALIAFERRO, *et al.*, )
        Plaintiffs, )
                                    )
v.                                          )        O R D E R
                                     )
NORTH CAROLINA STATE BOARD OF )
ELECTIONS, *et al.*, )
        Defendants. )

This cause comes before the Court on plaintiffs' motion for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Defendants have responded, plaintiffs have replied, and a hearing on the matter was held before the undersigned on September 23, 2020, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling and, for the reasons that follow, the motion is granted.

BACKGROUND

Four individual plaintiffs, Helen Jo Taliaferro, Kenneth Durden, Kendall Gibbs, and Ricky Scott, along with the North Carolina Council of the Blind, the Governor Morehead School Alumni Association, and Disability Rights North Carolina, initiated this suit by filing a complaint for injunctive and declaratory relief on July 27, 2020. [DE 1]. Plaintiffs' complaint alleges claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, against the North Carolina State Board of Elections (BOE) as well as the executive director, chair, secretary, and members of the BOE in their official capacities. Plaintiffs allege that North Carolina's

absentee voting program is inaccessible to registered North Carolina voters with visual disabilities.

North Carolina's absentee ballot program requires most voters to fill out a paper ballot and to physically return the ballot to the appropriate County Board of Elections. There are no alternatives for North Carolina voters who are blind or have low vision[1] and live in the United States, who are not in the military, and who wish to vote by absentee ballot. On June 29, 2020, plaintiff Disability Rights North Carolina and Disability Rights Advocates sent a letter to the BOE detailing the barriers to absentee voters who are blind. After the BOE failed to commit to addressing these barriers, plaintiffs filed the instant action.

Each of the individual plaintiffs is a North Carolina registered voter who typically votes in person using an accessible voting machine, which allows them to vote privately and independently. Under North Carolina law, an absentee ballot is available to any registered voter who requests one. After a voter requests an absentee ballot, a paper absentee ballot is mailed to the voter who requested it. The paper absentee ballot is printed in standard-sized text. Each individual plaintiff alleges that he or she is unable to complete the paper absentee ballot independently because he or she is either totally blind or is unable to read standard-sized print.

North Carolina does provide an alternative to the paper absentee ballot to overseas citizens and military members as required by the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C. § 20301, *et seq*. For these registered North Carolina voters, absentee ballots are made available by mail, fax, or email and they must be returned by the close of the polls on Election Day. Currently, defendants utilize an electronic voting portal called Democracy Live for UOCAVA voters. UOCAVA voters use the Democracy Live portal to

---

[1] The Court adopts plaintiffs' use of the term blind to refer to individuals who are blind as well as individuals who have low vision.

request an absentee ballot and may return their completed ballot by fax or email; in-country military personnel may return their ballots by mail by the close of the polls on Election Day.

Plaintiffs allege that defendants' failure to provide an accommodation to its absentee voting program which would allow blind voters to vote privately and independently violates the ADA and Section 504 of the Rehabilitation Act. Plaintiffs ask the BOE to take the same steps that other states, including Pennsylvania, Virginia, and Tennessee, have taken to either implement accessible absentee voting measures or make electronic absentee ballots currently available to UOCAVA voters available to blind North Carolina voters.

Additionally, North Carolina, and the world generally, is currently in the midst of the COVID-19 pandemic. As a result, requests for absentee ballots in North Carolina are higher than in other years as voters seek to avoid any risk that may be associated with in-person voting. Each of the individual plaintiffs seeks to vote by absentee ballot in the November 3, 2020, election as well. However, each plaintiff alleges he or she is faced with an untenable choice: risk going in person to the polls but retain the right to vote independently and privately, or avoid any COVID-19 risk by voting by absentee ballot, but give up the right to vote privately and independently because he or she would be unable to complete and return the ballot by him or herself.

## DISCUSSION

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotation and citation omitted). A movant must make a clear showing of the following four elements before a preliminary injunction may issue: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Roe v. Dep't*

*of Def.*, 947 F.3d 207, 219 (4th Cir. 2020). "Each of these four requirements must be satisfied." *Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019).

A.  Likelihood of success

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be subject to discrimination by any such [public] entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act (Section 504) provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." *Seremeth v. Bd. of Cty. Com'rs Frederick Cty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) (internal quotation and citation omitted).

Accordingly, to succeed on either claim, a plaintiff must demonstrate that (1) he or she is an individual with a disability; (2) who is qualified to benefit from a government service, program, or activity; (3) that the defendant running the program is a covered entity under the statute; and (4) that the plaintiff was denied the benefits of the service, program, or activity, or was otherwise discriminated against, on the basis of his or her disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

That plaintiffs have demonstrated a likelihood of success on the merits is not seriously in dispute. First, plaintiffs have sufficiently demonstrated through their declarations[2] that they are

---

[2] The Court indicated at the preliminary injunction hearing that it would rely on the record rather than take additional evidence at the hearing. Neither party objected.

4

individuals with disabilities as they are all blind, which substantially limits the major life activity of reading print, 42 U.S.C. § 12102(1)(A), or are members or constituents of the organizational plaintiffs. *See, e.g.* Scott Decl. ¶ 5. These plaintiffs have further shown that they are qualified individuals with a disability, 42 U.S.C. § 12131(2), as they are registered to vote in North Carolina, they intend to vote in the November 2020 election, and they are entitled and would strongly prefer to vote by absentee ballot in the upcoming election. *Id.* ¶¶ 3,4,15,16. It is not in dispute that defendants are covered entities under the ADA and Section 504.

Voting is a quintessential public activity, *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016), as is absentee voting specifically where a state has made such program available to all voters. *Id.* at 504. Defendants have made absentee paper ballots printed in standard-sized print available to all voters who request one. Plaintiffs have sufficiently demonstrated that in order to complete a paper ballot, they must be assisted by someone else, and thus are foreclosed from completing their ballots privately and independently. This is not the case for voters who wish to vote absentee but who are not blind. The Fourth Circuit has held that "effectively requiring disabled individuals to rely on the assistance of others to vote absentee" denies such voters meaningful access to the state's absentee voting program. *Id.* at 507.

> The *Lamone* court further recognized that
>
> Not all public services, programs, or activities can be made meaningfully accessible to all citizens, or at least they cannot be made so without a prohibitive cost or unreasonable effort on the part of the public entity. For this reason, to prevail on their ADA claim, plaintiffs must propose a reasonable modification to the challenged public program that will allow them the meaningful access they seek.

*Id.*

Plaintiffs here have asked that defendants make available some form of accessible paper ballot or implement technological tools that would enable plaintiffs to electronically receive and

mark their absentee ballots privately and independently. Plaintiffs cite several such reasonable accommodations in their brief, including ballot marking tools and electronic voting portals, and defendants do not appear to dispute that there is at least one reasonable solution they can implement to provide plaintiffs, and other blind voters, with the ability to privately and independently cast an absentee ballot.

Based upon the foregoing, the Court concludes that plaintiffs have demonstrated a likelihood of success on the merits of their claims.

B.   Irreparable harm

Plaintiffs have demonstrated irreparable harm. North Carolina has long recognized the right to cast a private or secret ballot, *see Withers v. Bd. of Comm'rs of Harnett Cty.*, 196 N.C. 535 (1929), and "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). Further, there are no ascertainable money damages that could be calculated to compensate plaintiffs for the denial of their right to cast a private ballot in the November 2020 or any future election. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985).

Defendants contend that plaintiffs' alleged harm is speculative because it is based on the possibility, not the likelihood, that they will be exposed to COVID-19 if they vote in person. Plaintiffs do not rely solely, however, on the existence of the COVID-19 pandemic to justify their claim for irreparable harm. Rather, plaintiffs challenge defendants' failure to provide a method for blind voters to cast an absentee ballot privately and independently, irrespective of whether there is an ongoing pandemic. As discussed above, absentee voting programs are quintessential public activities, the exclusion from which on the basis of disability plainly

6

amounts to an irreparable harm. That the COVID-19 pandemic provides the potential for increased risk for plaintiffs if they choose to vote in person only brings the fact that the absentee ballot program fails to provide sufficient accommodation into sharper focus.

C.    Public interest & balance of the equites

The Court considers the public interest and the balance of the equities together. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 602 (4th Cir. 2017). "By definition, the public interest favors permitting as many qualified voters to vote as possible." *League of Women Voters*, 769 F.3d at 247 (internal quotation, alteration, and citation omitted); *see also N. Carolina State Conference of NAACP v. Cooper*, 430 F. Supp. 3d 15, 53 (M.D.N.C. 2019) ("electoral integrity is enhanced, not diminished, when all eligible voters are allowed to exercise their right to vote free from interference and burden unnecessarily imposed by others."). Contrary to defendants' assertion that the public interest is best served by enforcement of a state's laws, the public interest does not lie with enforcement of those state procedures which violate the laws which Congress has passed to prevent discrimination based upon disability. *Lamone*, 813 F.3d at 508.

Defendants contend that, although plaintiffs will likely succeed on the merits and they will be required to modify their absentee ballot program in the future, to do so this close to Election Day would be unduly burdensome. Indeed, the real crux of this case is whether making an accommodation in sufficient time to allow plaintiffs to vote by absentee ballot privately and independently for the November 3, 2020, election is a sufficient hardship on defendants to outweigh both the public interest described above and the hardship experienced by plaintiffs in having to surrender their right to vote privately and independently when casting an absentee ballot for this election. The Court determines that it is not.

7

First factoring into the Court's consideration of the equities is the fact that defendants have been aware of plaintiffs' concerns and demands regarding North Carolina's inaccessible absentee voting program since at least June 26, 2020, but have failed to address them. [DE 27-11]; *see also* [DE 33-8] (September 2019 letter to North Carolina's Secretary of State regarding lack of accessible absentee ballots for blind voters).

Second, the Court finds defendants arguments concerning the risk and difficulty in making an accommodation to the Democracy Live portal in sufficient time for the November 3, 2020, election unavailing based upon the record before the Court. In her declaration, BOE Executive Director Karen Brinson Bell states that if a decision in this case is made by September 14, 2020, to require the availability of the Democracy Live portal for blind voters, the appropriate internal changes and legal review could be completed within one week, and the earliest the portal could go live would be October 19, 2020. Bell Decl. ¶ 17. In other words, it would take five weeks to get the system plaintiffs request up and running.

Plaintiffs do not object to this timeline, [DE 33], though their expert believes the necessary changes could be implemented much more quickly. Skelker Decl. ¶ 7. Amending the Democracy Live portal to allow blind voters access is the most feasible of the solutions proffered by plaintiffs that could be implemented in time for the upcoming election. Importantly, plaintiffs recognize that even if implementation takes as much time as defendants suggest, some days of access to a private, independent accessible absentee ballot are better than zero days of private, independent absentee voting. [DE 33 at 7].

Although defendants raise some concerns about ballot security, the Court is persuaded by plaintiffs' evidence that those concerns do not outweigh the public's interest in allowing plaintiffs to vote privately and independently, nor do they create any undue burden on defendants

8

in making the Democracy Live portal available for blind voters. As plaintiffs correctly note, there is no method of voting that is entirely free from security concerns. *See* Skelker Decl. ¶¶ 16, 19. Dr. Skelker's declaration demonstrates that hacking concerns for individual voters using an electronic voting system are extremely low. Moreover, defendants have already tested and approved the Democracy Live portal for UOCAVA voters. The Court is unpersuaded by defendants' argument that the addition of blind voters to the Democracy Live portal will intolerably increase any security risk. *See id.* ¶¶ 9-11; [DE 33-3 at 14-24].

It bears noting that there is no evidence in this record which would accurately demonstrate how many blind voters might actually use the Democracy Live absentee voting portal if it is made available to them. But the ADA does not require a mandate that certain individuals participate in public programs in a particular way. Rather, its focus is on providing reasonable accommodations so that disabled individuals may fully participate should they so choose. In other words, many blind voters may feel comfortable voting in person in this election or in having assistance completing and mailing a standard-sized print absentee ballot. *See also* Skelker Decl. ¶ 10 ("from my experience working in election technology, it is likely that the number of blind voters who opt into this system for the November 3 election will be low since this would be the first election where the electronic voting technology would be introduced to voters in North Carolina."). But for those who do not, accessing the Democracy Live voting portal already utilized by North Carolina UOCAVA voters is a reasonable accommodation which will not unduly burden defendants to provide in time for the November 3, 2020, election.

For all of these reasons, the Court finds that plaintiffs' have sufficiently demonstrated that the public interest lies with granting their injunction and the balance of the equities tips in their favor. Plaintiffs have demonstrated each of the four *Winter* factors, and the Court

determines that based upon this record they are entitled to a preliminary injunction. Plaintiffs originally sought an order directing defendants to (1) provide accessible absentee ballots, which includes accessible electronic ballots and alternative print format ballots (Braille and large print); (2) utilize and make accessible formats available for requesting, receiving, marking, signing, and returning the accessible ballots; and (3) ensure accessible absentee ballots are received and processed in a manner that does not reveal that the ballot was cast by a voter with a disability for the November 2020 general election. However, after defendants' response, plaintiffs in reply seek an order requiring defendants to open the Democracy Live portal to plaintiffs and other blind voters. The Court will impose the more narrowly tailored request for relief at this time.

D. Security

Rule 65(c) of the Federal Rules of Civil Procedure requires the Court to consider whether plaintiffs should provide security in an amount sufficient to pay the costs and damages sustained by any party found to have been wrongfully enjoined. Where circumstances warrant it, a nominal bond may suffice. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). In light of the important federal rights at issue in this case, and absent any request from defendants for plaintiffs to provide security, the Court determines waiver of the bond is appropriate in this instance.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction [DE 26] is GRANTED.

Defendants are hereby ORDERED to open the Democracy Live portal to plaintiffs and other blind voters as expeditiously as possible so that it may be utilized for the November 3, 2020 election.

The bond requirement is WAIVED.

SO ORDERED, this 24 day of September, 2020.

*Terrence W. Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

11