IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No. 5:20-cv-411-BO

| | |
|---|---|
| HELEN JO TALIAFERRO, KENNETH DURDEN, KENDALL GIBBS, RICKY SCOTT, NORTH CAROLINA COUNCIL OF THE BLIND, INC., GOVERNOR MOREHEAD SCHOOL ALUMNI ASSOCIATION, INC., and DISABILITY RIGHTS NORTH CAROLINA, <br><br> Plaintiffs, <br><br> v. <br><br> NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al*, <br><br> Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

North Carolina makes absentee voting available to all voters desiring to vote absentee. Defendants admit that their Absentee Voting Program is not equally available to blind voters because it requires voters to fill out and return standard print paper ballots. Blind individuals cannot independently read or mark standard print paper ballots because of their disability. As a result, blind voters must rely on sighted individuals to cast an absentee ballot in North Carolina.

Voting is a "quintessential public activity" and expression of political power that must be equally available to voters with disabilities. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016). It cannot be made "contingent on the happenstance that others are available to help." *See Disabled in Action v. Bd. of Elections in N.Y.C.*, 752 F.3d 189, 200 (2nd Cir. 2014). Blind voters, including the individual Plaintiffs, have historically been denied equal access to the Absentee Voting Program and communications related to the absentee voting process. Blind

voters are entitled to cast a private and independent absentee ballot and not to have to rely on sighted individuals to vote absentee. In their Answer, Defendants admit that the Absentee Voting Program is not equally accessible to blind voters. Consequently, Plaintiffs are entitled to judgment on the pleadings.

**ADMITTED FACTS**

Absentee voting in North Carolina is excuse-free and available to any registered voter who requests it. (Compl. ¶ 25, ECF No. 1; Answer ¶ 25, ECF No. 53). North Carolina's Absentee Voting Program is conducted through hard-copy print communications. (Compl. & Answer ¶ 26). To request an absentee ballot, voters must fill out and submit a written request form to their county board of elections. (*Id.* at ¶¶ 1, 26). Information can be handwritten on the form using a pen or marker, (*Id.* at ¶¶ 1, 26), or it can be typed into a *.PDF version of the request form and printed out, (Bell Decl. ¶ 8, ECF No. 27-6). All forms regardless of how filled out must be signed using a pen or marker (the "wet signature" requirement). (Compl. & Answer ¶ 26). The completed, signed request form must be mailed or hand-delivered to the voter's county board of elections. (*Id.*).[1] Once a voter's absentee ballot request has been processed, North Carolina mails a paper absentee ballot containing standard-size text to the requesting voter. (*Id.* at ¶¶ 27, 28).

The only absentee ballot option available to in-state, non-military North Carolina voters, including the individual Plaintiffs, is a paper ballot containing standard-size text. (*Id.*). North Carolina does not provide alternative, accessible formats of absentee ballots that can be used by

---

[1] In 2020, the General Assembly passed legislation permitting voters to request an absentee ballot online, but it is unclear if that will continue to be an option in all future elections. (*Id.*).

voters with print disabilities. (*Id.* at ¶ 1). As a result, blind[2] voters who rely on alternative document formats – including Braille, large print, electronic, and/or audio formats – for private and independent access to written information cannot use Defendants' print absentee ballots on an equal basis with other voters. (*Id.* at ¶ 2). Blind voters must secure the assistance of a third party to vote absentee, and as a result, blind voters must give up the independence and confidentiality enjoyed by others who use Defendants' Absentee Voting Program, despite the fact that alternative accessible means of requesting, receiving, marking, and returning absentee ballots are readily available. (*Id.* at ¶¶ 2, 3).

Each individual Plaintiff is a registered voter and has voted in past elections. (*Id.* at ¶¶ 12-15). North Carolina's paper absentee ballots are not accessible to Plaintiffs. (*Id.* at ¶ 28). To vote absentee, Plaintiffs must rely on the assistance of another person to read and mark their paper absentee ballots for them. (*Id.* at ¶ 28). Such assistance strips Plaintiffs of the independence and secrecy of their ballots, as well as the assurance that the ballot is marked with their choices. (*Id.* at ¶ 28). Defendants provide no other accessible means for Plaintiffs to receive, mark, or submit an absentee ballot privately and independently. (*Id.* at ¶ 29).

The State Board of Elections is a public entity that receives federal financial assistance. (*Id.* at ¶ 20). Voting is a service, program, or activity it provides. *(Id.* at ¶¶ 71-72, 88-89).

As all states must do, North Carolina participates in a special absentee voting program for military and overseas voters under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20301 *et seq*. (*Id.* at ¶ 49). Absentee ballots are available to UOCAVA voters by mail *and* by fax or email, and UOCAVA voters may return their completed

---

[2] Plaintiffs use the word "blind" to describe individuals who, as a result of a vision impairment, use alternative techniques or assistive technology for tasks done visually by persons without a visual impairment, including people who identify as "totally" blind and people with low vision.

3

ballots by mail *and* by fax or email. (*Id.*). Additionally, in 2020, North Carolina permitted UOCAVA voters to request, mark, and return their ballots through an electronic, web-based voting system. (Answer ¶ 26). Voters cannot gain access to the UOCAVA program through their disability status. (Compl. & Answer ¶ 49).

Pursuant to the Court's Order on Plaintiffs' Motion for Preliminary Injunction for the 2020 general election, Defendants permitted blind individuals access to the electronic voting system purchased and deployed for UOCAVA voters. (Order at 10, ECF No. 41; Answer ¶¶ 29, 37, 81-83, 90-92). Defendants did not make alternative accessible formats of paper ballots, such as Braille, large print, audio available for the 2020 general election. (Compl. & Answer ¶ 81). Making the electronic voting system and other aspects of the UOCAVA voting program available to individuals with vision disabilities (and other disabilities that affect the voter's ability to read a paper ballot, or to hold a pen or marker and mark a paper ballot) in all future elections is expected and readily implementable. (*Id.* at ¶ 52). *See, e.g.,* U.S. Dep't of Just., *Americans with Disabilities Act: Title II Technical Assistance Manual* § II-7.1000 (1993) ("Tax bills and other written communications provided by public entities are subject to the requirement for effective communication. Thus, where a public entity provides information in written form, it must, when requested, make that information available to individuals with vision impairments in a form that is usable by them," including large print, Braille, or audio tapes).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such a motion "is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). The court "take[s] the

facts in the light most favorable to the [non-moving party], but [it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Blue Rhino Glob. Sourcing, Inc. v. Well Traveled Imps., Inc.*, 888 F. Supp. 2d 718, 721 (M.D.N.C. 2012) (alteration in original) (*quoting Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). The court may consider the complaint and answer and also those documents integral to and explicitly relied on in the pleadings when deciding such a motion. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## ARGUMENT

I. **DEFENDANTS ADMIT THAT NORTH CAROLINA'S ABSENTEE VOTING PROGRAM DISCRIMINATES AGAINST BLIND VOTERS BASED ON DISABILITY.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A successful claim under Title II of the Americans with Disabilities Act consists of three elements: (1) that the plaintiffs are individuals with disabilities who are qualified to benefit from a government program, service, or activity; (2) that defendants running that program are covered entities under the statute; and (3) that plaintiffs were denied the benefits of the service, program, or activity, or otherwise discriminated against, on the basis of their disability. *Lamone,* 813 F.3d at 502-03. Claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, are generally subject to the same analysis. *J.D. ex rel. Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 669 n.6 (4th Cir. 2019). Plaintiffs demonstrate all three elements and are entitled to judgment on the pleadings.

5

Plaintiffs easily meet the first requirement. The individual Plaintiffs allege, and Defendants do not deny, that they are blind and are individuals with disabilities entitled to the protections of the ADA and Section 504 of the Rehabilitation Act. (Compl. & Answer ¶¶ 73, 87). Defendants also admit Plaintiffs are registered voters and that they have voted in past elections. (*Id.* at ¶¶ 12-15). The organizational Plaintiffs, North Carolina Council of the Blind ("NCCB"), the Governor Morehead School Alumni Association, Inc. ("GMSAAI"), and Disability Rights North Carolina ("DRNC") have standing to assert the rights of other blind voters because: (1) their members would otherwise have standing to sue as individuals; (2) the interests in this case are germane to the groups' purpose; and (3) "neither the claim made nor the relief requested requires the participation of individual members." *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (meeting the above three elements is sufficient to confer associational standing). Plaintiffs Helen Jo Taliaferro, Kenneth Durden, Kendall Gibbs, and Ricky Scott are members of the NCCB, Dr. Scott is also a member of the GMSAAI, and all Plaintiffs are constituents of DRNC (Compl. ¶¶ 12-15). Defendants admit that NCCB, GMSAAI, and DRNC are organizations that advocate on behalf of people with disabilities. (Compl. & Answer ¶¶ 16-19). The participation of individual members and constituents is not necessary because the Plaintiffs challenge the lack of accessible absentee voting options for all blind voters, and do not allege that individual blind voters were treated differently from one another requiring individualized remedies and relief. Consequently, NCCB, GMSAAI, and DRNC have associational standing to obtain systemic injunctive relief on behalf of blind voters across the state. *See, e.g.*, *Wilson v. Thomas*, 43 F. Supp. 3d 628, 632, (EDNC 2014) (holding that DRNC has standing to sue on behalf of North Carolinians with disabilities); *see also*, *Lamone*, 813 F.3d

at 510 (affirming systemic relief for organization of blind individuals, as well as individual blind voters).

As to the second element, Defendants admit they are a public entity that receives federal financial assistance, and that voting is a service, program, or activity they provide. (Compl. & Answer ¶¶ 71-72, 88-89).

As to the third requirement, Defendants admit that they currently deny blind voters, including the individual Plaintiffs, equal access to the Absentee Voting Program on the basis of their disability. (*Id.* at ¶¶ 2, 3). The individual Plaintiffs cannot access the Absentee Voting Program in North Carolina because of their blindness and inability to read Defendants' standard-size print paper ballots. (*Id.* at ¶¶ 27, 28.) The process for requesting and receiving an absentee ballot is itself inaccessible: in addition to the inaccessible standard print paper form used to request an absentee ballot, the electronic *.PDF version of the request form available on Defendant's website was not accessible. (Bell Decl. ¶ 8). Whether filled in electronically or in writing, the completed form must be signed in hard copy (the "wet signature" requirement). N.C. Gen. Stat. § 163-230.2. The request form must then be mailed or hand-delivered to the voter's county board of elections.[3]

Because no accessible alternative formats of ballots or an accessible ballot marking option is offered in North Carolina to help blind voters fill out an absentee ballot, such voters must find someone sighted and rely on that person to fill out the ballot accurately, without comment or pressure, and to keep their vote a secret. *See e.g.*, N.C. Gen. Stat. § 163-226.3

---

[3] For the 2020 general election, the request form could also be emailed or faxed to the voter's county board of elections or requested through an online portal. H1169, 2020 N.C. Sess. Laws, §§ 2.(a), 7. It is unclear whether these methods will be available for the 2021 municipal election and all future elections.

7

(enumerating limited categories of individuals allowed to assist). Defendants' continued reliance on standard print paper absentee ballots and communications about the voting process denies blind voters the opportunity to cast a private and independent absentee ballot as voters without disabilities do and offends both the principle of a private vote and the nondiscrimination principles of the ADA, the Rehabilitation Act, and other federal law guaranteeing that voters in federal elections be able to vote privately and independently. *See* Help America Vote Act of 2002, Pub. L. 107–252 § 301, 116 Stat. 1666, 1704 (*codified as amended at* 52 U.S.C. § 21081) (enshrining the right to review and change one's ballot privately and independently in federal elections). The right to a secret ballot, including a secret absentee ballot, has long been recognized in North Carolina, *Withers v. Bd. of Comm'rs of Harnett Cnty.*, 196 N.C. 535, 146 S.E. 225 (1929), and must be made equally available to voters with disabilities, *see Disabled in Action*, 752 F.3d at 199 (emphasizing the importance of privacy and independence for voters with disabilities in the context of a public entity's voting program); *Cal. Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1238 (N.D. Cal. 2013) ("[O]ne of the central features of voting, and one of its benefits, is voting privately and independently. . . . [U]nder the terms of the ADA or the Rehabilitation Act, the covered entity must provide meaningful access to private and independent voting.").

These conditions violate a number of guidelines for accessible government communications and for voting in particular. The ADA and Section 504 require public entities to "take appropriate steps to ensure that communications with applicants, participants, members of the public . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160.  The applicable regulations are clear that Defendants must affirmatively provide

8

individuals with auxiliary aids and services to ensure effective communication under the ADA and Section 504:

> (b)(1) A public entity **shall furnish appropriate auxiliary aids and services** where necessary to afford individuals with disabilities . . . An equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.
>
> (b)(2) . . . In determining what types of auxiliary aids and services are necessary, **a public entity shall give primary consideration to the requests of individuals with disabilities.** In order to be effective, auxiliary aids and services must be provided in **accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability**.

28 C.F.R. § 35.160 (emphasis added); *see also* 29 U.S.C. § 794. Auxiliary aids or services necessary for effective communication with blind individuals include "qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 35.104. *See e.g.* 45 C.F.R. § 84, App. A(F) (effective notice includes "braille[ ] messages, radio spots, and tactile devices on cards or envelopes to inform blind persons of the need to call the recipient for further information").

Defendants must also provide blind voters information about the steps that have been taken to provide them with equal access to the Absentee Voting Program, including the steps taken to provide effective communication and the auxiliary aids and services available to them. *See* 28 C.F.R. § 35.106; 45 C.F.R. 84.8. Defendants are also required to have an "ADA Coordinator" who ensures the provision of effective communication and who investigates and resolves complaints that effective communication was not provided. *See* 28 C.F.R. § 35.107. *See also* 45 C.F.R.§ 84.7. An ADA Coordinator is necessary to ensure that blind voters are able to

request the auxiliary aids and services appropriate to their needs. *See* 28 C.F.R. § 35.107 (requiring that public entities with more than fifty employees designate an ADA coordinator); 28 C.F.R. § 35.160 (providing that public entities must consider the preferences of the individual with a disability).

It is legally uncontroversial for the Court to recognize that standard print paper absentee ballots discriminate against blind voters. *See Hindel v. Husted*, 875 F.3d 344, 345 (6th Cir. 2017) (plaintiffs stated a cause of action under the ADA by alleging that with paper-only absentee ballots, "blind voters must seek the aid of a sighted person in order to vote absentee, thus depriving them of the ability to vote anonymously"); *Lamone*, 813 F.3d at 507 ("by effectively requiring disabled individuals to rely on the assistance of others to vote absentee, defendants have not provided plaintiffs with meaningful access to Maryland's absentee voting program"); *Drenth v. Boockvar*, Civil No. 1:20-CV-00829, 2020 WL 2745729, *5 (M.D. Pa. May 27, 2020) ("Plaintiffs have also been denied the benefits of a public program—in this case the ability to vote privately and independently without being physically present at a polling location—because of their disability").

Defendants admit facts showing that they do not provide equal access to the absentee ballot program, in violation of federal law.

**II. INJUNCTIVE RELIEF IS NECESSARY TO AFFORD BLIND VOTERS EQUAL ACCESS TO THE ABSENTEE VOTING PROGRAM.**

Permanent injunctive relief is appropriate when a plaintiff shows: (1) irreparable injury, that (2) cannot be adequately compensated for with monetary damages; (3) the balance of hardships tilts in favor of plaintiff; and (4) equitable relief is in the public interest. *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017). All four prongs are met here.

"[I]rreparable harm can be presumed from a violation of civil rights[] statutes such as the ADA." *Pathways Psychosocial v. Town of Leonardtown*, 223 F. Supp. 2d 699, 717 (D. Md. 2002). Defendant's failure to provide equal access to the Absentee Voting Program for blind voters cannot be redressed through money damages and constitutes irreparable harm.

The balance of hardships tips in favor of providing an accessible absentee balloting program. The proposed injunctive relief must pose more than mere fiscal and administrative problems to defendants to tip the balance away from the plaintiff who will suffer harm in the absence of relief. *See Todd ex rel. Todd v. Sorrell*, 841 F.2d 87, 88 (4th Cir. 1988 *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 229 (M.D.N.C. 2020) (defendants' harm, the expenditure of money and administrative burden associated with providing pre-rejection process to voters applying for absentee ballots and voting absentee, not enough to tip the balance of hardships in its favor). Requiring defendants to comply with the law is not a cognizable hardship on a defendant. *See White v. Martin*, Case No. 02-4154-CV-C-NKL, 2002 U.S. Dist. LEXIS 27281, 22-23 (W.D. Mo. 2002) (*citing Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (finding that an injunction requiring defendants to comply with existing law imposes no burden but "merely seeks to prevent the defendants from shirking their responsibilities")). A permanent injunction directing Defendants to make the Absentee Voting Program accessible to blind voters is in the public interest. Voting is a "critical area[]" for people with disabilities that Congress meant to protect in passing the ADA. 42 U.S.C. § 12101(a)(3). "[T]he public has a strong interest in exercising the 'fundamental political right' to vote. . . . The public interest therefore favors permitting as many qualified voters to vote as possible." *Obama for Am. v. Husted*, 697 F.3d 423, 436-37 (6th Cir. 2012) (internal quotation marks omitted). "[U]pholding constitutional rights serves the public interest." *Newsom ex rel. Newsom v.*

*Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). The public interest weighs heavily in favor of preventing infringement upon the fundamental right to vote. *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 237 (M.D.N.C. 2020). The public interest weighs in favor of issuing a permanent injunction.

The Plaintiffs should be awarded judgment on the pleadings to ensure North Carolinians have equal access to the Absentee Voting Program in all future elections.

## CONCLUSION

Defendants must offer Plaintiffs the opportunity to vote absentee privately and independently that they offer all other North Carolina voters by providing accessible absentee ballots and communications related to the voting process. Plaintiffs request that the Court grant their Motion for Judgment on the Pleadings, declare that the Absentee Voting Program is not currently accessible to blind voters, and issue a permanent injunction directing Defendants to: make Absentee Voting Program materials accessible to blind voter; provide an accessible absentee ballot and processes for requesting, receiving, signing, and returning absentee ballots in all future elections; and provide a means for blind voters to request auxiliary aids and services in the Absentee Voting Program, including the designation of an employee as an ADA Coordinator to process such requests.

This 13th day of May, 2021.    Respectfully submitted,

/s/ Rosa Lee Bichell
Rosa Lee Bichell*
rbichell@dralegal.org
C.A. State Bar No. 331530
Stuart Seaborn*
sseaborn@dralegal.org
C.A. State Bar No. 198590
DISABILITY RIGHTS ADVOCATES

2001 Center St #4
Berkeley, CA 94704
Phone: (510) 665-8644
Fax:     (510) 665-8511

Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930
Lisa Grafstein
lisa.grafstein@disabilityrightsnc.org
N.C. State Bar No. 22076
DISABILITY RIGHTS NC
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: (919) 856-2195
Fax:     (919) 856-2244

Christina Brandt-Young*
cbrandt-young@dralegal.org
N.Y. State Bar No. 4165189
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel:  (212) 644-8644
Fax:  (212) 644-8636


ATTORNEYS FOR PLAINTIFFS